UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DAVID GRIFFIN, | ) |
| Petitioner, | ) |
| vs. | ) Case No. 4:07CV2069 ERW(LMB) |
| DAVID DORMIRE, | ) |
| Respondent. | ) |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the court on the petition of David Griffin for a writ of habeas corpus under 28 U.S.C. § 2254. This cause was referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b).

Respondent has filed a Response to Order to Show Cause Why a Writ of Habeas Corpus Should Not be Granted. (Doc. No. 5). Petitioner has filed a Traverse. (Doc. No. 8).

**Procedural History**

Petitioner is presently incarcerated at Jefferson City Correctional Center in Jefferson City, Missouri, pursuant to the judgment and sentence of the Circuit Court of the City of St. Louis, Missouri. See Resp't Ex. A at 52-54. On February 18, 2004, petitioner was found guilty after a jury trial of first degree murder and armed criminal action. See id. He was sentenced as a prior offender to concurrent sentences of life imprisonment without the possibility of parole and thirty years imprisonment. See id.

Petitioner raised two points on direct appeal of his convictions. See Resp't Ex. F. In his first point, petitioner argued that the trial court erred in allowing the prosecutor to question him on cross-examination and to argue in closing that petitioner's post-arrest silence was evidence of his guilt. See id. In his second point, petitioner argued that the trial court abused its discretion in allowing the State to question the venire panel about the type of or amount of evidence it would require to find petitioner guilty. See id. On April 27, 2005, the Missouri Court of Appeals for the Eastern District affirmed petitioner's convictions. See id. The Missouri Court of Appeals issued its mandate on June 2, 2005. See Resp't Ex. G.

On August 22, 2005, petitioner filed a pro se Motion to Vacate, Set Aside or Correct the Judgment or Sentence of the Circuit Court of the City of St. Louis pursuant to Missouri Supreme Court Rule 29.15. See Resp't Ex. H at 3-8. After appointment of counsel, petitioner filed an Amended Motion to Vacate, Set Aside or Correct Judgment and Sentence and Request for Evidentiary Hearing. See id. at 9-41. In this motion, petitioner argued that he received ineffective assistance of counsel for the following reasons: (1) trial counsel failed to object to cross-examination by the prosecutor regarding a prior conviction for first degree tampering; (2) trial counsel failed to ask for the submission of an instruction on involuntary manslaughter; and (3) trial counsel failed to call Shalonda Riggins to testify as a witness at his trial. See id. On July 18, 2006, the motion court denied petitioner's motion for post-conviction relief in all respects without a hearing. See id. at 44-48. Petitioner timely filed a notice of appeal from the denial of post-conviction relief. See id. at 58-61.

Petitioner raised three points in his appeal from the denial of his post-conviction relief

motion.  See Resp't Ex. I.  In his first point, petitioner argued that the motion court clearly erred in denying his post-conviction relief motion because he was denied effective assistance of counsel when trial counsel failed to object to the prosecutor's cross-examination of petitioner during which evidence was elicited that petitioner had previously pled guilty to first degree tampering under a false name.  See id.  In his second point, petitioner argued that trial counsel was ineffective for failing to submit a jury instruction of involuntary manslaughter as a lesser included offense of murder in the first degree.  See id.  In his third point, petitioner argued that trial counsel was ineffective for failing to call Shalonda Riggins, who would have testified about the victim's reputation for violence in support of petitioner's claim of self-defense.  See id.  On March 15, 2007, the Missouri Court of Appeals for the Eastern District affirmed the denial of post-conviction relief.  See Resp't Ex. K.

On December 17, 2007, petitioner, pro se, filed a petition for a writ of habeas corpus, raising three grounds for relief.  (Doc. No. 1).  Petitioner first argues that trial counsel provided ineffective assistance by failing to object to the prosecutor's cross-examination of petitioner about his prior guilty plea to first degree tampering under a false name, and to the prosecutor's closing argument that petitioner's use of an assumed name was substantive evidence of guilt.  See id.  In his second ground for relief, petitioner argues that trial counsel provided ineffective assistance by failing to submit a jury instruction for involuntary manslaughter, a lesser-included offense of first degree murder.  See id.  In his third ground for relief, petitioner argues that trial counsel provided ineffective assistance by failing to have Shalonda Riggins testify regarding the victim's reputation for violence in support of petitioner's claim of self-defense.  See id.

3

On February 13, 2008, respondent filed a Response to Order to Show Cause, in which he argues that plaintiff's claims fail on their merits. (Doc. No. 5). On March 3, 2008, petitioner filed a Traverse, in which he provides further argument in support of his grounds for relief. (Doc. No. 8).

### **Facts**[1]

The sufficiency of the evidence is not in dispute. During trial, the State's evidence showed that police investigators went to petitioner's home in mid-May 2002, and told petitioner they were investigating a shooting that had occurred at a White Castle on March 10, 2002. Investigators asked if petitioner would give them a DNA sample to compare to the DNA on a hat left at the scene of the shooting. Petitioner agreed to provide the sample and signed a consent form. Petitioner did not otherwise provide investigators with any information about the shooting. After obtaining the DNA sample, investigators left without arresting petitioner and did not ask him to come to the police station for further questioning.

On or about May 30, 2002, investigators received the results of the comparison testing, which indicated that petitioner's DNA sample matched the DNA from the hat found at the scene of the shooting. In the meantime, two eyewitnesses to the shooting had identified petitioner as the shooter. Police subsequently arrested petitioner on or about June 6, 2002, and the State charged him with first-degree murder and armed criminal action.

After the close of the State's evidence, petitioner testified on his own behalf. Petitioner

---

[1]The court's summary of the facts is taken from the opinion of the Missouri Court of Appeals affirming petitioner's convictions and sentence. Respt's Ex. F at 3-4.

testified that he had gone to the White Castle on March 10, 2002, to order some food. Petitioner further testified that he had seen the victim in the White Castle parking lot and, although he knew of the victim through a mutual friend, he had never before interacted, argued, or fought with the victim. Petitioner then testified that the victim approached petitioner and hit petitioner with his fist. Petitioner said he fell to the ground and saw the victim running toward his car. Petitioner testified that he panicked and pulled out his gun because he believed the victim had a gun in his car. Petitioner testified that he ran after the victim and shot him three or four times in an effort to prevent the victim from shooting petitioner. Petitioner also testified that he did not know why he shot the victim and that he was angry at the victim for hitting him. Petitioner testified that, although he was acting in self-defense when he shot the victim, he did not report the incident to police because he feared going to jail. Petitioner admitted that he spoke with police during their investigation in mid-May 2002, which was a few weeks prior to his arrest, and that he voluntarily gave police a sample of his DNA. He also admitted that he did not tell police at that time he had shot the victim in self-defense. Petitioner further testified that when police arrested him and charged him with first-degree murder, he still did not tell them he had shot the victim in self-defense. Instead, petitioner testified that he told police, in a post-arrest recorded statement, he and another person, Julius, attempted to rob the victim, and Julius shot the victim.

## I.  **Standard of Review**

A federal court's power to grant a writ of habeas corpus is governed by 28 U.S.C. § 2254(d), which provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody

5

>in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>>(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court construed § 2254(d) in Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). With respect to the "contrary to" language, a majority of the Court held that a state court decision is contrary to clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or if "the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413, 120 S.Ct. 1523. Under the "unreasonable application" prong of § 2254(d)(1), a writ may issue if "the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies [the principle] to the facts of the particular state prisoner's case." Id. Thus, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409, 120 S.Ct. 1521. Although the Court failed to specifically define "objectively unreasonable," it observed that "an unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410, 120 S.Ct. 522.

6

**II.    Petitioner's Claims**

As previously stated, petitioner raises three grounds for relief. The undersigned will address petitioner's grounds for relief in turn.

**1.    Ground One**

In his first ground for relief, petitioner argues that trial counsel provided ineffective assistance by failing to object to the prosecutor's cross-examination of petitioner about his prior guilty plea to first degree tampering under a false name, and to the prosecutor's closing argument that petitioner's use of an assumed name was substantive evidence of guilt.

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate that his attorney failed to exercise the degree of skill and diligence a reasonably competent attorney would exercise under similar circumstances, and additionally, the petitioner must show that he was prejudiced by his attorney's action or inaction. See Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). A petitioner must show that "counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment." Id. "Prejudice" is shown by a petitioner when it is demonstrated that there is a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. Id. at 694, 104 S. Ct. 2068. A "reasonable probability" is defined as a probability sufficient to undermine confidence in the outcome. Id. The petitioner must not only assert prejudice, but must affirmatively prove that prejudice was present. See id. at 693, 104 S. Ct. 2067. Further, Counsel's decision not to interview or call a particular witness is evaluated from the perspective of counsel at the time the decision was made. Parker v. Bowersox, 94 F.3d

7

458, 461 (8th Cir. 1996). The question is whether trial counsel's performance, when viewed in this light, fell "outside the wide range of professionally reasonable performance." Id. (citing Strickland, 406 U.S. at 687, 104 S. Ct. 2064).

Petitioner raised this claim in his post-conviction relief motion and in his appeal from the denial of post-conviction relief. The Missouri Court of Appeals cited Strickland and then held as follows:

> Attacking a witness's credibility through proof of prior crimes is a common method of impeachment. Taylor v. State, 173 S.W.3d 359, 365 (Mo. App. 2005). Under section 491.050 of the Revised Missouri Statutes (2006),
>
>> Any person who has been convicted of a crime is, notwithstanding, a competent witness; however, any prior criminal convictions may be proved to affect his credibility in a civil or criminal case and, further, any prior pleas of guilty...may be proved to affect his credibility in a criminal case. Such proof may be by the record or by his own cross-examination, upon which he must answer any question relevant to that inquiry...
>
> The State has an "absolute right" to impeach a defendant with prior convictions when a defendant chooses to take the stand in his own defense. Taylor v. State, 173 S.W.3d at 366; (citations omitted). The prosecutor may lawfully comment on the prior convictions to affect the defendant's credibility. Id. at 367; (citing State v. Blackburn, 789 S.W.2d 126, 128 (Mo. App. 1990)).
> [Petitioner] cites State v. Phelps, 677 S.W.2d 418 (Mo. App. 1984), in which this court reversed the defendant's conviction due to the trial court's error in allowing the State to cross examine the defendant concerning details of his prior conviction. The present case is distinguishable. In Phelps, the defendant admitted to his prior conviction on direct examination. The State subsequently cross examined the defendant concerning details of the crime, such as the planning of the crime and the acquisition of the weapon involved. This court found the questioning to be unjustified for the purpose of impeaching the defendant's credibility, because the prior conviction had already been established on direct examination. Phelps, at 421.
> In the present case, [petitioner] also admitted to a prior conviction on direct examination. The subsequent cross examination elicited the fact that [petitioner] had pleaded guilty to that crime under a false name, but did not bring out any details of the actual crime. The fact that [petitioner] had lied under oath during that court proceeding was relevant to [petitioner's] credibility as a witness on his own behalf. The State did not attempt to elicit any other details of the previous crime. The questions concerned only the year in which the crime occurred and the fact that [petitioner] lied under oath during the

8

> related proceedings. The impeachment was based on [petitioner's] previous statements under oath in which he pleaded guilty under an assumed name. This line of questioning is proper for impeachment purposes under § 491.050 RSMo (2006), which states "any prior pleas of guilty...may be proved to affect his credibility in a criminal case." Any objection by counsel to this line of questioning would have been without merit, and therefore counsel was not ineffective for failing to make such an objection.
>
> [Petitioner] also claims he was prejudiced by counsel's failure to object to the prosecutor's closing argument which revisited the impeachment testimony. "A trial court has broad discretion in controlling closing arguments and counsel is given wide latitude in making summations. A prosecutor is allowed to argue the evidence and all reasonable inferences from the evidence during closing arguments." State v. Henke, 901 S.W.2d 921, 924 (Mo. App. 1995); (citations omitted). As noted above, because [petitioner] took the stand in his own defense and was therefore subject to cross examination regarding prior convictions for impeachment purposes, the arguments made by the State regarding [petitioner's] credibility were permissible. The State properly revisited the credibility issue during its closing argument. Since counsel's objection would have been without merit, counsel cannot be found to have acted ineffectively in this regard. Point denied.

Resp't Ex. K at 4-6.

The decision of the state court is not contrary to or an unreasonable application of clearly established federal law. The Court found that the State's impeachment of petitioner's testimony with evidence of a prior conviction was proper under Missouri law. The Court further found that the prosecutor's statements regarding this credibility issue during closing argument were permissible. Trial counsel was not ineffective for failing to make meritless objections.

Accordingly, the undersigned recommends that petitioner's first ground for relief be denied.

### 2. Ground Two

In his second ground for relief, petitioner argues that trial counsel provided ineffective assistance by failing to submit a jury instruction for involuntary manslaughter, a lesser-included offense of first degree murder.

Petitioner raised this claim in his post-conviction relief motion and in his appeal from the

9

denial of post-conviction relief. The Missouri Court of Appeals held as follows:

> In his second point, [petitioner] argues counsel was ineffective for failing to submit a jury instruction of involuntary manslaughter as a lesser included offense of murder in the first degree. "To establish a claim for ineffective assistance of counsel for failure to request a lesser included offense instruction, a movant must show that the evidence would have required submission of a lesser included offense instruction had one been requested, that the decision not to request the instruction was not reasonable trial strategy, and that the movant was thereby prejudiced." Jackson v. State, 205 S.W.3d 282, 285 (Mo. App. 2006).
>
> In Baugh v. State, 811 S.W.2d 486, 487 (Mo. App. 1991), the court acknowledged that involuntary manslaughter is a lesser included offense of murder, first degree. In that case, as in the present case, the jury was instructed on murder, first degree, murder, second degree, and voluntary manslaughter. Also like the present case, the jury found the defendant guilty of murder, first degree. The Baugh court stated that there was no reasonable basis to conclude that the jury would have been more lenient if the instruction for involuntary manslaughter had been given. Id. Similarly, here there is no reason to believe that if the jury chose to convict [petitioner] of first degree murder when given the option to find [petitioner] guilty of the lesser offenses of second degree murder or voluntary manslaughter, that they would have found him guilty of the lesser offense of involuntary manslaughter, had they been instructed on it.
>
> Moreover, in Jackson, the court determined that defense counsel's decision not to submit a lesser included offense instruction was a reasonable trial strategy, because counsel wanted to avoid giving the jury a middle ground, which would perhaps negate the defendant's self-defense argument. Jackson v. State, 205 S.W.3d at 285. In the present case, it is reasonable that trial counsel may have had a similar motive. By not submitting the lesser offense instruction, counsel's strategy may have been to leave the jury with no middle ground, anticipating that there would be enough doubt created by the self defense argument to prevent them from finding [petitioner] guilty of the more serious charges.
>
> [Petitioner] has not shown that the outcome of the trial would have been different had the instruction been requested, and therefore, was not prejudiced by trial counsel's failure to submit the instruction of the lesser included offense of involuntary manslaughter. Point denied.

Resp't Ex. K at 6-7.

"[F]ailure of the trial court to give a [lesser included offense] instruction [does] not rise to the level of constitutional error." Pitts v. Lockhart, 911 F.2d 109, 112 (8th Cir. 1990), cert. denied, 501 U.S. 1253 (1991). The Supreme Court has never held that failure to give a lesser included offense instruction in a non-capital case was a violation of federal law. As such, the state

10

court did not violate any established federal law. Tatum v. Dormire, 183 F.3d 875, 878 (8th Cir. 1999); Hughes v. Lund, 152 F. Supp. 2d 1178, 1183 (N.D. Iowa 2001). Further, since the jury opted not to convict petitioner of second degree murder or voluntary manslaughter, both lesser offenses offered to them, it is unlikely they would have convicted him of involuntary manslaughter instead of first degree murder.

Accordingly, the undersigned recommends that petitioner's second ground for relief be denied.

### 3. Ground Three

In his third ground for relief, petitioner argues that trial counsel provided ineffective assistance by failing to call Shalonda Riggins to testify regarding the victim's reputation for violence in support of petitioner's claim of self-defense. Specifically, petitioner contends that Ms. Riggins would have testified that, prior to the shooting, she told petitioner that the victim had broken her car windows, flattened her tires, and was under investigation for an unrelated shooting.

Petitioner raised this claim in his post-conviction relief motion and on appeal from the denial of post-conviction relief. The Missouri Court of Appeals held as follows:

> In his third point, [petitioner] argues counsel was ineffective for failing to call a witness who would have testified about the victim's reputation for violence in support of [petitioner's] claim of self-defense. "Trial counsel's decision not to call a witness is presumed to be trial strategy unless otherwise clearly shown...To establish ineffectiveness of trial counsel for failing to call a witness, movant must show that the witness would testify if called, and that the testimony would provide a viable defense." Bucklew v. State, 38 S.W.3d 395, 398 (Mo. banc 2001); (citing State v. Clay, 975 S.W.2d 121, 143 (Mo. banc 1998)). In Bucklew, the court determined that the movant failed to show the decision not to call the witness was not trial strategy. Id. The court also found that the proposed witness's testimony would have been cumulative. Id. Here, as in Bucklew, [petitioner] did not offer any evidence to show the decision not to call the proposed witness was not part of trial counsel's strategy and further, the proposed witness's

11

> testimony regarding the victim's reputation for violence would have been cumulative as to [petitioner's] own testimony. [Petitioner] had already testified regarding the proposed witness's relationship with the victim and recounted what she had told him about the victim's violent behavior. [Petitioner] did not offer anything to establish that, had the proposed witness testified, the outcome of the trial would have been different. The motion court stated that the proposed witness's testimony would not have changed the outcome of the case and was not relevant to [petitioner's] claim of self defense. [Petitioner] has not shown he was prejudiced by trial counsel's failure to call this witness, and therefore counsel cannot be found ineffective. Point denied.

Resp't Ex. K at 7-8.

The decision of the Missouri Court of Appeals is not contrary to or an unreasonable application of clearly established federal law. Ms. Riggins' testimony regarding the victim's alleged prior acts of violence would not have provided a defense for petitioner. As such, petitioner is unable to demonstrate prejudice as a result of trial counsel's failure to call Ms. Riggins.

Accordingly, the undersigned recommends that petitioner's third ground for relief be denied.

### III.  **Certificate of Appealability**

To grant a certificate of appealability, a federal habeas court must find a substantial showing of the denial of a federal constitutional right. See 28 U.S.C. § 2253(c)(2); Hunter v. Bowersox, 172 F.3d 1016, 1020 (8th Cir. 1999). A substantial showing is established if the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997) (citing Flieger v. Delo, 16 F.3d 878, 882-83 (8th Cir. 1994)). In this case, petitioner has failed to make a substantial showing of the denial of a constitutional right. The undersigned is not persuaded that

the issues raised in his petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings.

Accordingly, the undersigned recommends that no certificate of appealability be issued.

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the petition of David Griffin for a writ of habeas corpus under 28 U.S.C. § 2254 be **denied**.

**IT IS FURTHER RECOMMENDED** that no certificate of appealability be issued.

The parties are advised they have fourteen (14) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636 (b) (1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

Dated this 24th day of September, 2010.

/s/ Lewis M. Blanton
LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE